IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 11-cv-02404-MSK

EDWARD MONTOUR,

        Petitioner,

v.

TOM CLEMENTS, Executive Director of the Colorado Department of Corrections,

        Respondent..

_____

## OPINION AND ORDER DENYING PETITION
_____

**THIS MATTER** comes before the Court pursuant to Mr. Montour's Petition for a Writ

of *Habeas Corpus* **(# 1)**, the Respondent's response **(# 18)**, and Mr. Montour's reply **(# 20)**.[1]

## FACTS

The facts underlying this matter are relatively straightforward.  In or about October 2002,

Mr. Montour was charged with several offenses, most notably First Degree Murder After

Deliberation, C.R.S. § 18-3-102(1)(a).  In December 2002, the State of Colorado filed a Notice

of Intent to Seek the Death Penalty under C.R.S. §18-1.3-1201(3)(a), and supplied Mr. Montour

with Notice to Defendant of Aggravating Factors Regarding Death Penalty under C.R.S. § 18-

1.3-1201(3)(b)(I) (citing aggravating factors found in C.R.S. § 18-1.3-1201(5)(a), (b), (c), (f), (j),

and (o)).

---

[1]Mr. Montour has moved to stay **(# 3)** state court proceedings pending resolution of this
case.  Because this Order resolves the action, the motion to stay is denied as moot.

1

In January 2003, Mr. Montour agreed to plead guilty to the First Degree Murder charge. Mr. Montour's plea agreement recited Mr. Montour's admission of each of the requisite elements of the crime of First Degree Murder – that, with intent, he caused the death of another person after deliberation.  The plea agreement also acknowledged Mr. Montour's understanding that the State would continue to press for the death penalty despite his plea of guilty, and that a judge would "conduct a separate sentencing hearing to determine if I should be sentenced to life in prison without parole or to death."  The sentencing hearing proceeded in front of a judge, and Mr. Montour was sentenced to death.

Mr. Montour appealed his sentence and in 2007, the Colorado Supreme Court found that Colorado's sentencing scheme – in which defendants pleading guilty to the underlying crime were automatically deemed to waive a right to have a jury determine whether the death penalty should be imposed – was unconstitutional.  *People v. Montour*, 157 P.3d 489, 492 (Colo. 2007). Noting that Mr. Montour was not challenging the validity of his plea or the constitutionality of any other aspect of the death penalty scheme, the Court thus "remand[ed] the case to the district court for a new sentencing hearing before a newly impaneled jury unless the defendant waives the right to jury sentencing."  *Id.* at 506.

Consistent with that instruction (and it appearing that Mr. Montour has not waived his right to have a jury determine whether to impose the death penalty), the Colorado District Court for Douglas County has now set a sentencing hearing to commence in February 2012.

## ISSUES

Mr. Montour files the instant Petition pursuant to 28 U.S.C. § 2241, alleging that subjecting him to the scheduled sentencing hearing (the analysis herein also refers to it as a

"penalty phase") will deprive him of the U.S. Constitution's protection against Double Jeopardy. Mr. Montour argues that, where (as in Colorado) eligibility for the death penalty turns on the presence of statutorily-defined "aggravating factors," those factors are elements of the offense that must be included in a charging document and proved at trial (or admitted in a plea agreement).  In this sense, he contends, the ordinary crime of First Degree Murder (or "murder *simpliciter*") is a "lesser included offense" of the capital crime of "First Degree Murder With Aggravating Circumstances."  Mr. Montour points out that his plea of guilty to the trial court admitted only the elements of murder *simpliciter*, and did not include admissions of any conduct relating to aggravating circumstances.  Thus, he argues, because constitutional jeopardy attached at the time his plea of guilty was accepted by the trial court, he cannot now be "tried" on the greater offense of "First Degree Murder With Aggravating Circumstances," and must instead be sentenced based on having committed the crime of murder *simpliciter*.

## ANALYSIS

28 U.S.C. § 2241(c)(3) permits this Court to grant relief to Mr. Montour if he is "in custody in violation of the Constitution . . . of the United States."  The parties agree that where, as here, a defendant contends that subjecting him to a proceeding yet to commence would violate his rights under the Double Jeopardy clause, jurisdiction under § 2241 is properly invoked.[2] *Harrison v. Gillespie*, 640 F.3d 888, 896 (9th Cir. 2011).

The Fifth Amendment to the U.S. Constitution provides that no person shall "be subject

---

[2]The State contends that Mr. Montour has not adequately exhausted his state remedies, precluding this Court from considering his *habeas* petition.  The Court has reviewed those arguments, but finds them to be without merit and that Mr. Montour has adequately exhausted the claims presented herein.

for the same offense to be twice put in jeopardy of life or limb." Extended to the states by

operation of the Fourteenth Amendment, the effect of the double jeopardy provision is to protect

a defendant from being tried or punished twice for the same offense. *Sattazahn v. Pennsylvania*,

537 U.S. 101, 106 (2003). Application of the double jeopardy clause is particularly context-

sensitive. For example, when a defendant is convicted of murder and sentenced to life

imprisonment but successfully challenges the conviction on appeal, the double jeopardy clause

does not prevent the imposition of the death penalty following a subsequent retrial. *Id., citing*

*Stroud v. U.S.*, 251 U.S. 15 (1919). In contrast, when a defendant proceeds through a capital

sentencing proceeding that possesses "aspects . . . that resembled a trial," the double jeopardy

clause is implicated – and imposition of a death sentence upon retrial is precluded – if the jury's

findings in the initial sentencing phase are the equivalent of an acquittal on the questions

considered by the jury. *Id.*, *citing Bullington v. Missouri*, 451 U.S. 430 (1981).

Mr. Montour's argument here – that his plea of guilt to murder *simpliciter* precludes the

State from convening a penalty phase proceeding to "try" him for the separate "charge" of First

Degree Murder With Aggravating Circumstances – relies on a series of cases beginning with

*Apprendi v. New Jersey,* 530 U.S. 466 (2000). The Court thus reviews each of the relevant cases

in that line.

### *Apprendi*

In *Apprendi,* the substantive crime for which the defendant was convicted carried a

maximum penalty of ten years, but a separate "hate crime" statute allowed for an even lengthier

sentence to be imposed if the trial judge found at sentencing, by a preponderance of evidence,

that the defendant committed the substantive crime with a particular mental state. The question

4

addressed by the Court was whether the U.S. Constitution – specifically, the 6th Amendment, as incorporated by the 14th Amendment – required that a jury, rather than a judge, determine whether the defendant possessed the mental state required by the hate crime statute, and whether the requisite standard of proof of that mental state should be beyond a reasonable doubt, rather than a preponderance of the evidence.  *Id.* at 475-76.   This inquiry required the Court to address the murky distinction between factual findings that constitute elements of a criminal offense and factual findings that were merely considered "sentencing factors."  *Id.* at 478.  Recognizing a longstanding tradition that permitted judges to make factual findings – *i.e.* those about the circumstances of the crime or about the characteristics of the defendant – that bear on the appropriate sentence to be imposed, the Court emphasized that this power existed only to the extent that the sentence being imposed was "within statutory limits."  *Id.* at 481, 494 n. 19.  Thus, the Court set forth *Apprendi*'s basic rule: "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt."  *Id.* at 490.

Before moving on to *Apprendi*'s progeny, it is worthwhile to address three specific aspects of *Apprendi* that become significant as the analysis here progresses.  First, although *Apprendi* found that the hate crime "enhancement" was more akin to an element of a substantive offense than a "sentencing factor," the Court declined to grapple with the fact that the hate crime enhancement had not been charged in the indictment.  Although the Court explained that the outcome of *Apprendi* "was foreshadowed by our opinion in *Jones v. United States*, 526 U.S. 527 (1999)" – a case holding that "any fact . . . that increases the maximum penalty for a crime must be <u>charged in an indictment</u>, submitted to a jury, and proven beyond a reasonable doubt," 530

5

U.S. at 476 (emphasis added) – the Court in *Apprendi* expressly declined to address the requirement that the facts supporting the sentence enhancement be charged in an indictment.  In a footnote, it explained that "Apprendi has not here asserted a constitutional claim based on the omission of any reference to the sentence enhancement . . . in the indictment," and that Mr. Apprendi was relying only on the 6th Amendment's guarantee of a jury trial and the 14th Amendment's due process requirement that facts be proven beyond a reasonable doubt, not the 5th Amendment's guarantee of a right to be indicted.  530 U.S. at 477 n. 3.  In *dicta*, the Court expressed some skepticism that such an argument would have vitality in a state prosecution (such as that brought against Mr. Apprendi), explaining that the 14th Amendment "has not, however, been construed to include the Fifth Amendment right to presentment or indictment of a Grand Jury."  *Id.*, *citing Almendarez-Torres v. U.S.*, 523 U.S. 224 (1998).  Thus, the *Apprendi* Court "[did] not address the indictment question separately today."

Second, the *Apprendi* decision is the genesis of a passage that lies at the heart of Mr. Montour's current argument, which this Court will sometimes refer to as the "greater offense" doctrine.  In a footnote explaining that *Apprendi*'s reasoning was not intended to "suggest that the term 'sentencing factor' is devoid of meaning," the Court stated that a sentencing factor "appropriately describes a circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence <u>within the range</u> authorized by the jury's finding that the defendant is guilty of a particular offense."  *Id.* at 494 n. 19 (emphasis in original). Conversely, when the fact is used to increase the punishment beyond the maximum authorized statutory sentence, "it is the functional equivalent of <u>an element of a greater offense</u> than the one covered by the jury's guilty verdict."  *Id.* (emphasis added).  As explained in more detail herein,

this single sentence in *Apprendi* is the headwaters of Mr. Montour's argument that murder *simpliciter* is a "lesser included offense" of the "greater offense" of capital murder.

Third, *Apprendi* expressly contemplated, and to some extent dismissed, concerns that the rule it was announcing would affect capital sentencing determinations. The final substantive paragraph of the majority's opinion explains that "this Court has previously considered and rejected the argument that the principles guiding our decision today render invalid state capital sentencing schemes requiring judges, after a jury verdict holding the defendant guilty of a capital crime, to find specific aggravating factors before imposing a sentence of death." *Id.* at 496. Explaining that "capital cases are not controlling," the Court went on to quote from prior precedent:

> Neither the cases cited, nor any other case, permits a judge to determine the existence of a fact which makes a crime a capital offense. What the cited cases hold is that, once a jury has found the defendant guilty of all the elements of an offense which carries as its maximum penalty the sentence of death, it may be left to the judge to decide whether that maximum penalty, rather than a lesser one, ought to be imposed. . . . The person who is charged with actions that expose him to the death penalty has an absolute entitlement to jury trial on all the elements of the charge.

530 U.S. at 497, *quoting Almendarez-Torres*, 523 U.S. at 257 n. 2.

## *Ring*

This third point became a fundamental issue of contention when *Apprendi*'s rule was applied in the death penalty context. In *Ring v. Airzona*, 536 U.S. 584 (2002), Airzona's death penalty scheme (like that existing in Colorado when Mr. Montour was first sentenced) provided that "following a jury adjudication of a defendant's guilt of first-degree murder, the trial judge, sitting alone, determines the presence or absence of the aggravating factors required by Arizona

law for imposition of the death penalty." *Id.* at 588.  Although the Court had previously

approved of such a scheme in *Walton v. Arizona*, 497 U.S. 639 (1990), and implied in *Apprendi*

that such schemes were permissible, the *Ring* court found that the intervening reasoning of

*Apprendi* "is irreconcilable with *Walton's* holding in this regard and today we overrule *Walton*."

536 U.S. at 589.  As the discussion of *Apprendi* makes clear, the *Apprendi* rule is invoked only

where the sentence "enhancement" operates to increase the penalty above the statutory

maximum sentence available for the substantive crime upon which the conviction rests.  In *Ring*,

the Court contrasted two different views of Arizona's death penalty scheme that had been

discussed as part of *Apprendi*.  The *Apprendi* majority understood that "a conviction of first-

degree murder in Arizona carried a maximum sentence of death," but that "it may be left to the

judge to decide whether that maximum penalty, rather than a lesser one, ought to be imposed."

536 U.S. at 602.  Justice O'Connor, dissenting in *Apprendi*, described Airzona's scheme

differently, stating that "a defendant convicted of first-degree murder in Arizona cannot receive a

death sentence unless a judge makes the factual determination that a statutory aggravating factor

exists[; w]ithout that critical finding, the maximum sentence to which the defendant is exposed is

life imprisonment." *Id.* at 603.  The *Ring* Court looked to the Arizona Supreme Court's own

assessment of the scheme, finding that Arizona agreed with Justice O'Connor's description.  *Id.*

at 603 ("Defendant's death sentence required the judge's factual findings").  Thus, the Court

concluded, the maximum punishment available on Mr. Ring's conviction for first degree murder

was life imprisonment, and a scheme that permitted a greater sentence than that statutory

maximum – *i.e.* based on the presence of one or more aggravating factors – must permit those

findings to be made by a jury, not a judge. *Id.* at 604.

8

As noted above, a single passage in *Apprendi* described a factor that increased the sentence beyond the statutory maximum as being "the functional equivalent of an element of a greater offense." *Ring* cites this same passage from *Apprendi*, in support of a statement that "*Apprendi* repeatedly instructs . . . that the characterization of a fact or circumstance as an 'element' or a 'sentencing factor' is not determinative of the question 'who decides,' judge or jury." *Id*. at 604-05. Beyond that citation to *Apprendi,* however, *Ring* does not elaborate on the "greater offense" concept.[3]

<u>*Sattazahn*</u>

The following year, the Supreme Court decided *Sattazahn*. 537 U.S. 101 (2003). In *Sattazahn*, the defendant was convicted of first degree murder and the case moved to a death penalty phase before a jury. After presentation of evidence, the jury deadlocked on whether any aggravating factor was present. *Id.* at 104. In accordance with Pennsylvania law, the jury's inability to reach a unanimous verdict compelled the trial court to impose the sentence of life without parole. *Id.* at 105. An appellate court found that the trial judge incorrectly instructed the jury in the substantive trial, vacated the first degree murder conviction, and remanded the matter for a new trial. *Id.* On retrial, the defendant was again convicted of first degree murder and the jury in the second penalty phase hearing imposed a sentence of death. *Id.* The defendant appealed, arguing that the second penalty phase proceeding violated his rights under the Double

---

[3]Like *Apprendi*, *Ring* expressly refused to address the question of whether the government was required to include facts underlying aggravating factors in the indictment. 536 U.S. at 597 n. 4 ("Ring does not contend that his indictment was constitutionally defective"). The Court did, however, repeat the *dicta* that the "Fourteenth Amendment has not been construed to include the Fifth Amendment right to presentment or indictment of a Grand Jury." *Id.* (internal quotes and ellipsis omitted).

Jeopardy clause.

In reviewing that argument, the Supreme Court had no issue with the notion that, upon vacatur of the conviction, the defendant could be re-tried and re-sentenced: "[w]here, as here, a defendant is convicted of murder and sentenced to life imprisonment, but appeals the conviction and succeeds in having it set aside, we have held that jeopardy has not terminated, so that the life sentence imposed in connection with the initial conviction raises no double-jeopardy bar to a death sentence on retrial." *Id.* at 106.  However, the Court held that the penalty phase proceedings themselves, if they "have the hallmarks of the trial on guilt or innocence," present their own double jeopardy issues.  Noting that the penalty phase required the state to prove the existence of an aggravating factor beyond a reasonable doubt, the Court reasoned that "a sentence of life imprisonment [handed down by a jury] signifies that the jury has already acquitted the defendant of whatever was necessary to impose the death sentence [*i.e.* an aggravating factor, and thus] the Double Jeopardy Clause bars a State from seeking the death penalty on retrial." *Id.*  Thus, the question posed in *Sattazahn* was whether the jury's inability to agree on whether an aggravating factor had been proven was the equivalent of an "acquittal" on the state's "charge" that an aggravating factor was present.  Just as a hung jury on a substantive charge is not the equivalent of an acquittal on that charge, the Court concluded that the penalty phase jury's "result – or more appropriately, that non-result – cannot fairly be called an acquittal." *Id.* at 109.

The simple observation that the jury's deadlock was not the equivalent of an "acquittal" on the aggravating factors would have been sufficient to dispose of the issue in *Sattazahn*.  But a three-member plurality of the Court believed that additional explanation was necessary.  In Part

III of the *Sattazahn* opinion, the plurality explained that prior precedent "tripped over the test of the Double Jeopardy Clause" in attempting to apply it in capital sentencing proceedings, and sought to explain that cases such as *Apprendi* and *Ring* "clarified what constitutes an 'element' of an offense for purposes of the Sixth Amendment's jury trial guarantee."  In doing so, the plurality appeared to significantly expand the "greater offense" language that otherwise occupied only a single sentence in *Apprendi* (and a mere quotation of that sentence in *Ring*).  The plurality began with the observation that *Ring* "held that aggravating circumstances that make a defendant eligible for the death penalty operate as the functional equivalent of an element of a greater offense." *Id.* at 111.  "That is to say," the plurality continued, "for purposes of the Sixth Amendment's jury-trial guarantee, the underlying offense of 'murder' is a distinct, lesser included offense of 'murder plus one or more aggravating circumstances.'" *Id.*  The plurality went on to state that "[w]e can think of no principled reason to distinguish, in this context, between what constitutes an offense for purposes of the Sixth Amendment's jury-trial guarantee and what constitutes an 'offense' for purposes of the Fifth Amendment's Double Jeopardy Clause." *Id.*   "In the post-*Ring* world," the plurality explained, it is still "correct to focus on whether a factfinder has made findings that constituted an 'acquittal' of the aggravating circumstances," but not because "a capital-sentencing proceeding is 'comparable to a trial.'" *Id.* at 112.  Rather, conclusive factual findings made at one penalty phase trial are given Double Jeopardy effect in future penalty phase proceedings because "'murder plus one or more aggravating circumstances' is a separate offense from 'murder' *simpliciter*." *Id.*

<u>Mr. Montour's Double Jeopardy argument</u>

This final statement is the heart of Mr. Montour's current argument: that his plea to First

Degree Murder, without any admission of aggravating factors, constitutes a conviction on the "lesser offense" of "murder *simpliciter*", and that Double Jeopardy now precludes the State from convening a penalty phase jury on the "greater offense" of "murder plus one or more aggravating circumstances." This Court finds that argument unpersuasive for several reasons.

First, and perhaps most simply, the language that Mr. Montour relies upon is that of a three-member plurality of the Supreme Court, not a majority of justices. As such, the "greater offense" doctrine set forth in Part III of *Sattazahn* does not reflect binding law; it reflects only the particular views of three members of the Supreme Court.[4] Moreover, Part III of the opinion is also *dicta*, insofar as it was unnecessary to the Court's holding. Once the Court determined

---

[4]Justice Ginsburg's dissenting opinion in *Sattazahn*, in which three justices joined, sought to point out how Pennsylvania's statutory scheme – which required a life sentence be imposed if the penalty phase jury deadlocked on aggravating factors – presented a compelling case for application of the Double Jeopardy rule. 547 U.S. at 747 n. 6. The dissent sought to distance itself from prior precedent establishing that the Double Jeopardy clause does not apply when the defendant has successfully appealed a conviction, explaining that "[t]his Court has determined . . . that for purposes of the Double Jeopardy Clause, capital sentencing proceedings involving proof of one or more aggravating factors are to be treated as trials of separate <u>offenses</u>, not mere sentencing proceedings." *Id.* (emphasis in original). In support of this assertion, the dissent cites to Part III of the majority's opinion. From this, an argument can be made that the four dissenters agreed with the plurality's opinion in Part III, suggesting that a majority seven justices agreed with Part III's "greater offense" theory.

*U.S. v. Cheever*, 423 F.Supp.2d 1181, 1190-91 & n. 6 (D.Kan. 2006), a case focusing on the question of whether *Sattazahn* requires aggravating factors to be alleged in the indictment, rejected the argument that Justice Ginsburg's dissent converted the plurality's opinion in Part III to a majority opinion. *Cheever* recognizes that *Apprendi* considered sentencing factors to be the "<u>functional equivalent</u>" of elements of the offense, not necessarily <u>actual</u> elements. *Id.* at 1190. It noted that the *Sattazahn* plurality omitted the phrase "functional equivalent" when referencing *Apprendi*, whereas the *Sattazahn* dissent recognized that aggravating factors would be "<u>treated as</u> trials of separate offenses." *Id.* at n. 6. Thus, *Cheever* found that "the dissent's position on the matter [of whether aggravating factors presented a distinct "greater offense"] [is] at least ambiguous," and declined to treat Part III of *Sattazahn* as being a majority opinion. *Id.* This Court finds *Cheever*'s reasoning persuasive and declines to construe Justice Ginsburg and the other dissenters as joining fully in the relevant aspect of the plurality's "greater offense" theory..

that the jury's deadlock was not the equivalent of an "acquittal" on an aggravating factor, the outcome of the case was determined.  The plurality's attempt to then clarify the underlying rationale for the "acquittal" rule is thus not binding for precedential purposes.

More importantly, Mr. Montour's argument misinterprets the significance of the plurality's statement.  Close examination of the plurality opinion reveals that it does nothing more than revise the explanation for the Court's existing "acquittal" rule.  Much like an author who attempts to update ancient literature into modern vernacular, the purpose of Part III of *Sattazahn* is to update the stated justification for the "acquittal" rule in light of *Apprendi*.  The plurality was troubled by existing precedent's reasoning that capital sentencing proceedings are subject to Double Jeopardy concerns simply because they "have the hallmarks of a trial."  *Id.*, *citing Bullington*, 451 U.S. at  439.  Instead, it believed that cases like *Apprendi* and *Ring* offered a more intellectually-satisfying reason for allowing a jury's penalty phase factual findings to have preclusive effect.  Rather than focusing on the "trial-like" attributes of a sentencing proceeding, the plurality believed that penalty phase proceedings could be likened to trial of an "offense" just like the guilt phase, such that "acquittal" of the defendant on the existence of an aggravating factor was akin to an "acquittal" of the defendant on an element of the substantive crime.  The "acquittal" rule remained the same – a conclusive factual finding on an issue in one proceeding had preclusive effect on that same factual issue in any subsequent retrial; only the rationale justifying it changed.  537 U.S. at 112 (it remains "correct to focus on whether a factfinder had made findings that constituted an 'acquittal' of the aggravating circumstances; but the reason that issue was central is not that a capital-sentencing proceeding is 'comparable to a trial,' but rather that 'murder plus one or more aggravating circumstances' is a separate offense

13

from 'murder' *simpliciter*").

The plurality in *Sattazahn* was not, as Mr. Montour would suggest, radically reshaping death penalty jurisdprudence. Were it seeking to do so, it seems remarkable that it would do so in such an ambiguous and indirect way. For decades, the Supreme Court has acknowledged, without criticism, death penalty schemes that contemplate separate "guilt phase" and "penalty phase" proceedings. *See e.g. Bullington*, 451 U.S. at 433-35. Under Mr. Montour's argument, every one of these schemes would be precluded by the Double Jeopardy clause, as the termination of the "guilt phase" – in which only the "lesser offense" of murder *simpliciter* is tried – would bar a subsequent "penalty phase" of the "greater offense" of aggravating circumstances. Were it the plurality's intention in *Sattazahn* to do so, one would expect the plurality to note the existence of such sentencing schemes, to concede that the effect of its decision would preclude such schemes, and to otherwise acknowledge its recognition that Part III of *Sattazahn* would have dramatic and lasting consequences on many states' death penalty schemes. The absence of even a hint of any such acknowledgment in *Sattazahn* strongly suggests that Mr. Montour's reading of Part III is not what the plurality intended.

Indeed, the fallacy in Mr. Montour's argument becomes apparent when one recognizes that the outcome of *Sattazahn* is impossible if the plurality's opinion is interpreted as advocated by Mr. Montour. Mr. Sattazahn was "was convicted in the guilt phase of his first trial of the lesser offense of first degree murder" (*i.e.* murder *simpliciter*). *Id.* at 112-13 (emphasis added). When that conviction was vacated on appeal, "[a]t the second trial, the jury again convicted petitioner of first degree murder." *Id.* at 105. Thus, in both trials, Mr. Sattazahn was convicted of murder *simpliciter*, not, as the plurality describes it, the "greater offense" of "murder plus one

14

or more aggravating circumstances."  At the conclusion of Mr. Sattazahn's second trial, he and Mr. Montour were in identical procedural postures – both had been convicted of murder *simipliciter*, but not of any aggravating circumstances.  Under Mr. Montour's argument here, the conviction of Mr. Sattazahn on only murder *simpliciter* should have prevented the state from convening a penalty phase proceeding to address the "greater offense" of "murder plus one or more aggravating circumstances."  But the Supreme Court in *Sattazahn* – including the plurality – not only endorsed the notion of a penalty phase proceeding with regard to Mr. Sattazahn, it affirmed the death sentence imposed on Mr. Sattazahn as a result of that penalty phase proceeding.  *Id.* at 116.

Thus, whatever may be said to be the significance of the plurality's "greater offense" doctrine, that doctrine cannot possibly mean that the Double Jeopardy clause prevents the state from following up a murder *simpliciter* conviction with a penalty phase proceeding to address aggravating factors.[5]

Accordingly, this Court does not find that *Apprendi*, *Ring*, or *Sattazahn* support the

---

[5] Confusion here may be due to poor phrasing by the plurality in *Sattazahn* (and perhaps even by the majority in *Apprendi* that first used the phrase "greater offense").  Since *Blockburger v. U.S.*, 284 U.S. 299, 304 (1932), the Court has held that once a defendant is tried on a "lesser [included] offense," the Double Jeopardy clause prevents a second trial of that defendant on a "greater offense" that entirely subsumes the elements of the already-tried lesser offense.  Mr. Montour appears to read the plurality's "greater/lesser offense" language in *Sattazahn* as if that language was intended by the plurality to equate to concepts of "greater offense" and "lesser offense" under *Blockburger.*  But as the discussion above makes clear, such a reading leads to absurd results.

As *Cheever, supra.,* notes, such confusion results from *Sattazanhn* overlooking the first part of *Apprendi*'s phraseology, describing these factual questions as the "<u>functional equivalent</u> of an element of a greater offense."  530 at 494 n. 19 (emphasis added).  By omitting the phrase "functional equivalent" when quoting *Apprendi*, the plurality in *Sattazahn* fails to adequately convey that aggravating factors are, conceptually, <u>like</u> elements of a metaphorical "greater offense," not that they are <u>actually</u> elements of an <u>actual</u> greater offense.

15

Double Jeopardy argument urged by Mr. Montour here. None of those cases stand for the proposition that the Double Jeopardy clause operates such that a conviction (via jury verdict or guilty plea) of murder *simpliciter* precludes the state from thereafter convening a capital sentencing proceeding (except where (i) the factfinder at trial was presented with the issue of the sentencing enhancement and resolved in favor of the defendant; or (ii) a prior capital sentencing proceeding resulted in conclusive factual findings in favor of the defendant).

<u>Omission of aggravating factors from indictment</u>

A generous reading of Mr. Montour's Petition reveals an alternative, independent argument that, if valid, would also prevent a penalty hearing. Although *Apprendi* expressly refuses to reach the question, it appears to imply that facts elevating the potential sentence above a statutory maximum – facts that, *Ring* suggests, include aggravating circumstances in capital cases – are substantive facts that must be pled in an indictment. 530 U.S. at 476 ("our opinion in *Jones* . . . noted that . . . any fact (other than prior conviction) that increases the maximum penalty for a crime must be <u>charged in an indictment</u>, submitted to a jury, and proven beyond a reasonable doubt. The Fourteenth Amendment commands the same answer in this case involving a state statute").

The record does not clearly reflect the charging instrument in this case. Neither the state court docket sheet nor the parties' briefing clearly indicates whether Mr. Montour was charged by means of a felony complaint under C.R.Cr.P. 3 and 4, or whether he was indicted by a Grand Jury under C.R.Cr.P. 7. However, the parties appear to agree that, regardless of the charging instrument used, that instrument did not allege facts underlying any aggravating factors; rather, it appears that the State timely notified Mr. Montour of its intent to seek the death penalty and the

alleged aggravating factors by filing a notice consistent with Colorado law, several weeks after this prosecution commenced.

To the extent Mr. Montour makes an argument claiming the right to have aggravating factors specified in an indictment, this argument misinterprets the law. *Apprendi* makes clear that the constitutional requirement that such facts be pled in the indictment arises from the Fifth Amendment to the U.S. Constitution. *Apprendi* and *Ring* express doubt that the Fifth Amendment's guarantee of a right to be indicted by a Grand Jury is applicable to state prosecutions, as that protection has not been understood to be incorporated by the Fourteenth Amendment. *Apprendi*, 530 U.S. at 477 n. 3; *Ring*, 536 U.S. at 597 n. 4; *see also Williams v. Haviland*, 467 F.3d 527, 531-32 (6th Cir. 2006) ("the district court's conclusion that *Apprendi* requires that state prosecutions must employ indictments listing all elements of a crime . . . runs contrary to the Supreme Court's repeated assertion that the Grand Jury Clause of the Fifth Amendment does not apply to the states").

Mr. Montour cites to *U.S. v. Pennington*,[6] 2003 US Dist. LEXIS 24478, (W.D.Ky. Feb. 19, 2003), a case in which the court prohibited a capital sentencing proceeding from occurring because the government had not alleged any aggravating factors in the indictment. But the analysis in *Pennington*, which involved a <u>federal</u> prosecution subject to the Fifth Amendment's right to indictment by a Grand Jury, is inapplicable to the <u>state</u> prosecution of Mr. Montour.

---

[6]Mr. Montour's citation to *Pennington* is what leads this Court to believe that Mr. Montour intends to assert a separate "indictment"-based argument. Although Mr. Montour appears to cite *Pennington* as somehow supporting his "greater offense" argument, it is clear that *Pennington* itself was decided solely on the fact that, in such a federal prosecution, "the indictment must include the mental intent and statutory aggravating actors in order to charge a capital offense," and the indictment there did not do so. *Id.* at * 19.

Even *Pennington* itself acknowledges this fact: "The Supreme Court held well over one hundred years ago that the indictment protections found in the Fifth Amendment do not apply to the states, and it has not wavered from that opinion.  Therefore, Ring (like Apprendi) could not rely on the Fifth Amendment in challenging his [state] conviction." *Id.* at * 18 (internal citation and emphasis omitted).[7]  Similarly, Mr. Montour's reliance on *U.S. v. Cotton*, 535 U.S. 625, 627 (2002) ("we address whether the omission from a <u>federal</u> indictment of a fact that enhances the statutory maximum sentence justifies a court of appeals' vacating the enhanced sentence") (emphasis added), is equally misplaced.

Even assuming that *Apprendi* can be read more broadly to require that aggravating factors in capital cases be alleged in the charging instrument, this Court is not prepared to say that Colorado's procedure, which contemplates that the State will give a defendant notice of its intention to seek the death penalty within 60 days after arraignment, C.R.Cr.P. 32.1(b), and, 20 days later, shall give notice of the specific aggravating factors alleged, C.R.Cr.P. 32.1(d)(1), contravenes such a requirement.  It is undisputed that Mr. Montour was provided with the required notice(s), and his plea agreement expressly recited his understanding of the aggravating factors that were alleged and which the State would seek to prove at a penalty phase hearing. The vague references in *Apprendi* to a requirement that such facts be alleged in an indictment gives no indication as to whether that requirement derives from a belief that the indictment or charging instrument possesses a unique character, requiring that aggravating factors be contained in that specific document, or whether the issue is simply one of adequate notice regardless of

---

[7]*Pennington* is further distinguishable insofar as there, the prosecution "concede[d] that both intent and statutory aggravating factors should have been included in the indictment."  The state here has made no such concession (nor, for the reasons set forth above, should it).

title or nature of the document providing such notice.  Given the sharp distinctions between federal and state practices, the Court has some doubt that the former argument has any viability. In any event, Mr. Montour has not adequately presented or supported such a contention, and thus, the Court need not reach it.

Because the U.S. Constitution does not require the State of Colorado to include aggravating factors in the indictment when prosecuting Mr. Montour, this Court cannot, in the guise of a *habeas* proceeding, halt the 2012 penalty phase proceeding because the state has not done so.

## **CONCLUSION**

Accordingly, the Court finds that subjecting Mr. Montour to a penalty phase proceeding, as is scheduled for February 2012, does not contravene his rights under the Double Jeopardy clause of the Fifth Amendment.  His Petition **(# 1)** is **DENIED**.  His Motion to Stay **(# 3)** the state proceedings is **DENIED AS MOOT**.  The Clerk of the Court shall close this case.

Dated this 31st day of October, 2011

**BY THE COURT:**

Marcia S. Krieger
United States District Judge